UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD STANLEY, | : CIVIL ACTION NO. 3:CV-12-0622 |
| Plaintiff | : (Judge Nealon) |
| v. | : |
| MICHAEL WENEROWICZ, et al., | : |
| Defendants | : |

**MEMORANDUM**

FILED
SCRANTON
MAR 0 1 2013
PER _____
DEPUTY CLERK

## BACKGROUND

Plaintiff, an inmate confined in the State Correctional Institution, Frackville ("SCI-Frackville"), Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1, complaint). He complains of violations of his First and Fourteenth Amendment rights to the free exercise of his religion. Id. The alleged violations occurred when Plaintiff, who possessed a Department of Corrections ("DOC") beard exemption, was required to shave his beard prior to being transferred from SCI-Frackville to a prison in the Commonwealth of Virginia. Id. The named Defendants are Jeffrey A. Beard, DOC Secretary, and the following current and former employees of SCI-Frackville: Major Michael Lorady, Captain Timothy Clark, Lt. Jesse James, Unit Manager Russell Scheuren, Superintendent Assistant Pete Damiter, Corrections Counselor Albert Idacavage, Deputy Superintendent A. Kovalchik, and Superintendent Michael Wenerowicz.

Presently before the Court is Defendants' motion to dismiss Plaintiff's complaint. (Doc. 12). The parties have fully briefed the issues and the motion is now ripe for disposition. For the reasons that follow, Defendants' motion to dismiss will be granted, in part, and denied, in part.

I.  **Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," FED. R. CIV. P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (per curiam).

In resolving the motion to dismiss, the court will "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, the factual elements will be separated from the legal elements and the legal conclusions disregarded. Id. at 210-11. Second, the court will "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a " 'plausible claim for relief.' " Id. at 211 (quoted case omitted).

2

In addition, because Plaintiff complains about "prison conditions," the screening provisions of 42 U.S.C. § 1997e apply, as do the screening provisions of 28 U.S.C. § 1915(e), given that he was granted in forma pauperis status to pursue this suit. The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless sua sponte rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez, 203 F.3d 1122; Dare v. U.S., 2007 WL 1811198, *4 (W.D. Pa. 2007), aff'd, 264 Fed. Appx. 183 (3d Cir. 2008).

II. **Allegations in Complaint**

Plaintiff alleges that on April 28, 2010, he was "handcuffed and escorted by two correctional officers from Administrative Custody to four awaiting correctional officers, each dressed in black riot gear, who then escorted [him] to B Block." (Doc. 1, complaint at 4). Plaintiff states that, upon arriving at B Block, he was "ordered to pack his personal belongings as he was being transferred." Id. Plaintiff claims that he immediately complied with the officer's order. Id.

Plaintiff claims that he was then confronted by Defendant Lorady, who "gave a 'direct order' that Plaintiff shave his beard." Id. Plaintiff then avers as follows:

> 18. Plaintiff informed Defendant Lorady he did not wish to go to Virginia and, as a Muslim, was prohibited from shaving his beard. Plaintiff further stated that Defendant Clark and Defendant Scheuren informed him that Virginia does not permit inmates to wear beards and inmates with exemptions would not be sent there.
>
> 19. Defendant Lorady responded by stating that Plaintiff had no say in the matter and again ordered him to shave.
>
> 20. Plaintiff once more attempted to explain to Defendant Lorady that his religion prohibited shaving his beard. Plaintiff further informed Defendant Lorady that he

3

had a valid 'hair exemption' issued by the DOC. To which Defendant Lorady replied he did not care.

21. Defendant Lorady stated to Plaintiff that if he refused to shave voluntarily he would be forcibly shaved. As confirmation Defendant Lorady stated "we are not dressed like this for nothing" pointing to the officers donning the riot gear.

22. Defendant Lorady, apparently frustrated by Plaintiff's protest, stated that either he shave his beard willingly or he would have him "strapped down" and shaved. Plaintiff, fearful of being beaten and adversely affecting his parole eligibility, shaved his beard. Defendant James and correctional officers present humiliated Plaintiff by making jokes about how funny he looked beardless.

Id. at 4, ¶¶ 18–22.

Plaintiff alleges that soon after he was transferred to a prison in Virginia. Id. Plaintiff avers that "while [in a Virginia prison, he] was forced to shave every day as Virginia adheres to a strict policy prohibiting beards." Id. at ¶ 23. Plaintiff avers that after his transfer, he "requested a Pennsylvania grievance form from prison officials but was told that the DOC did not make any available." Id. at ¶ 24.

Plaintiff alleges that in July 2010, he was informed that Virginia prison staff had recently become aware of his approved PA DOC hair exemption and was told that he would be transferred back to Pennsylvania. Id. at ¶ 25. Plaintiff states that on July 19, 2010, he was transferred back to SCI–Frackville. Id. at ¶ 26. Plaintiff has remained confined in SCI–Frackville since July 19, 2010.

On April 4, 2012, Plaintiff filed the instant action. He alleges violations of his religious free exercise rights under the First and Fourteenth Amendments, due to his improper transfer from SCI–Frackville to a Virginia state prison where he was required to shave his beard despite his hair exemption granted by the PA DOC due to his Muslim religion. For relief, Plaintiff requests compensatory and punitive damages, as well as declaratory relief.

## III. Discussion

In a § 1983 civil rights action, the plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and that the conduct complained of deprived the plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. Parratt v. Taylor, 451 U.S. 527 (1981); Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993); Beattie v. Dept. of Corrections SCI–Mahanoy, 2009 WL 533051, *3 (M.D. Pa. 2009). Further, Section 1983 is not a source of substantive rights; rather, it is a means to redress violations of federal law by state actors. Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of respondeat superior. See Iqbal, 556 U.S. 662 ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of respondeat superior."); Parratt, 451 U.S. 527; Rizzo v. Goode, 423 U.S. 362 (1976); Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (concluding that claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of respondeat superior ); Hampton v. Holmesburg Prison Officials, 1546 F.2d 1077, 1082 (3d Cir. 1976). Personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and a complaint must allege such personal involvement. Id. Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which the plaintiff's claims are based. Iqbal, 556 U.S. at 675 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As the Court stated in Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs.... [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

See also Beattie v. Dept. of Corrections SCI-Mahanoy, 2009 WL 533051, *3 ("[A] prerequisite for a viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights."), citing Rode, 845 F.2d 1195.

### A. Free Exercise of Religion Claim

In Thompson v. PA. DOC, 2007 WL 404056, *1-2 (M.D. Pa. 2007), the Court stated:

> The DOC has an inmate Hygiene and Grooming Policy, DC-ADM 807. The Policy provides, in pertinent part "Hair that does not fall below the top of the collar (afro styles no longer than four inches) shall be permitted[.] Section E of DC-ADM 807 sets forth the procedures that an inmate must follow in order to obtain an exemption to the grooming policy for legitimate religious purposes, and provides as follows:
>
> 1. Exceptions to the provisions of this directive may be granted for legitimate religious reasons on a case by case basis. The following procedures are to be followed to request/obtain a religious exemption:
>
>> 1. The inmate must provide a written request for a haircut exemption to the Facility Chaplaincy Program Director (F.C.P.D.)
>>
>> 2. The request must indicate the religious conviction upon which the exemption is based.
>>
>> 3. All inmates requesting a haircut exemption on the basis of religious conviction must supply something in writing confirming the inmate's participation in the particular religion[.]
>>
>> 4. The F.C.P.D., after speaking with the inmate, determines the validity of the request.
>>
>> 5. The F.C.P.D. shall notify the Superintendent or designee of the determination and recommendation[.]
>>
>> 6. The Superintendent's decision is sent to the F.C.P.D. who, in turn, notifies the appropriate staff and inmate[.]

> 7. In cases where the F.C.P.D. cannot make an appropriate determination, the Facility Chaplaincy Program Director must submit all written information to the Administration of Religion and Family Services for review and recommendation.
>
> 8. The exemption will be lifted if there is a change in the status of the inmate, e.g. converts to another religion which does not require an exemption to hair length.

DC–ADM 807–2–3.

> The Thompson Court also stated:
>
> The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. Amend. I. In Cantwell v. Connecticut, 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), the Supreme Court held that the First Amendment was incorporated by the Fourteenth Amendment and, thus, was applicable to the states.
>
> It is well established that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." Bell v. Wolfish, 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). "Inmates clearly retain protections afforded by the First Amendment, ... including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (citations omitted). Constitutional rights, however, including the right to practice religion, may be reasonably restricted in order to facilitate valid penological objectives, such as deterrence of crime, rehabilitation of prisoners, and institutional security. See Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 132, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); Pell v. Procunier, 417 U.S. 817, 822–23, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Accordingly, a prison inmate "retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell, 417 U.S. at 822.
>
> The Court of Appeals for the Third Circuit has upheld the validity of the hair length regulations of DC–ADM 807. See Wilson v. Schillinger, 761 F.2d 921 (1985); Cole v. Flick, 758 F.2d 124 (3d Cir.), cert. denied, 474 U.S. 921, 106 S.Ct. 253, 88 L.Ed.2d 260 (1985), Dreibelbis v. Marks, 742 F.2d 792 (1984). The Court of Appeals Circuit found that the justifications for the policy, including, inter alia, (1) internal security, insofar as long hair could be used to conceal or transport contraband, including weapons or drugs, or by thwarting identification; (2) sanitation concerns, in that long hair increases the risk of lice and infection, particularly with respect to those inmates working in mail and food services; and (3) to prevent the possibility that institutional security would be jeopardized by selective

7

enforcement of institutional directives, were all clearly legitimate in that they are directly related to prison security, and that DC–ADM 807 did not represent an exaggerated response to those concerns. See Cole, supra.

Id. at *2–*3.

Plaintiff, here, does not challenge the DOC hair length regulations and exemptions. Rather, he claims that he was improperly placed on the out of state transfer list, transferred to Virginia, and made to shave despite his DOC hair exemption, despite Defendants' knowing that he was not an appropriate inmate for the list due to his exemption. Plaintiff states that Defendants Idacavage and Scheuren submitted his name for an involuntary transfer to the State of Virginia, and that Plaintiff he personally advised Defendants Lorady, Scheuren and Clark that his religion prohibited the shaving of his beard and that he had a valid hair exemption. Plaintiff avers that despite his hair exemption, Defendants Lorady and Scheuren made him shave his beard on April 28, 2010. Plaintiff alleges that Defendants Superintendent Wenerowicz and Deputy Superintendent Kovalchik approved transferring him to Virginia despite knowing that he was a practicing Muslim, that shaving his beard was prohibited, and that he had a valid hair exemption. Plaintiff further avers that Defendants Clark and James, intelligence officers, reviewed inmates on the transfer list for approval, and that these two Defendants approved his transfer to Virginia despite knowing that he was a practicing Muslim, that shaving his beard was prohibited, and that he had a valid hair exemption. Plaintiff alleges that soon after the April 28, 2010 incident in which he was made to shave, he was transferred to a correctional facility in Virginia, where he was forced to shave every day. Plaintiff alleges that he was transferred back to SCI–Frackville on July 19, 2010, after the Superintendent at the Virginia facility became aware he had an approved hair exemption. Thus, this Court finds that Plaintiff has alleged sincerely held religious beliefs which prohibit the shaving

8

of his beard, and that he has sufficiently stated the personal involvement of Defendants Lorady, Scheuren, Clark, James, Idacavage, Superintendent Wenerowicz, and Deputy Superintendent Kovalchik with respect to his free exercise of religion claim under the First Amendment and Fourteenth Amendment. As such, Defendants' motion to dismiss will be denied as to Plaintiff's First and Fourteenth Amendment claims.

### B. Supervisory Defendant DOC Secretly Beard

Plaintiff does not sufficiently allege that supervisory Defendant DOC Secretary Beard improperly placed him on the out of state transfer list or that Defendant Beard transferred him to a Virginia state prison where he was made to shave despite his DOC hair exemption. Nor does Plaintiff aver that Defendant Beard personally knew that he was not an appropriate inmate for the transfer list due to his exemption.

As discussed, personal liability in a civil rights action cannot be imposed upon an official based on a theory of respondeat superior. See Parratt, 451 U.S. 527. Accordingly, this Court finds that Beard is named as a Defendant based only on respondeat superior. Plaintiff does not aver he personally approached Defendant Beard about his transfer or about being improperly placed on the out-of-state transfer list. Plaintiff merely names him as a Defendant based on his DOC supervisory position. Thus, it is clear that Plaintiff is attempting to hold this Defendant liable based solely upon his position and, as such, his complaint will be dismissed as to Defendant Beard.

### C. Defendant Grievance Coordinator Damiter

Plaintiff avers that Defendant Grievance Coordinator Damiter rejected his original grievance regarding his transfer to Virginia as untimely, and that after it was remanded by the DOC Chief Grievance Officer for a response on its merits, Defendant Damiter denied his grievance. See

9

(Doc. 1, p. 5). To the extent Plaintiff is claiming that Defendant Damiter violated his constitutional rights regarding his response to his grievance, this Defendant should be dismissed.

A prison official's response or lack thereof to an inmate's administrative remedies is not sufficient, alone, to hold the official liable in a civil rights action. The law is well-settled that there is no constitutional right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977). This Court has also recognized that grievance procedures are not constitutionally mandated. See Chimenti v. Kimber, Civil No. 3:01-CV-0273, slip op. at p. 18 n.8 (March 15, 2002) (Vanaskie, C.J.), reversed in part, C.A. No. 03-2056 (3d Cir. June 8, 2005) (Non-Precedential). Even if the prison provides for a grievance procedure, as the DOC does, violations of those procedures do not amount to a civil rights cause of action. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), cert denied, 488 U.S. 898 (1988); Hoover v. Watson, 886 F. Supp. 410, 418 (D. Del.1995), aff'd 74 F.3d 1226 (3d Cir. 1995). See also Burnside v. Moser, Civil No. 04-2485 (M.D. Pa. December 16, 2004, Order, p. 3) (Muir, J.) (Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted). Therefore, a prison official's alleged failure to process the prisoner's grievances, does not state a constitutional claim. Id. Defendants' motion to dismiss will be granted on this basis and any claims by Plaintiff against Defendant Damiter in relation to the handling of Plaintiff's grievance will be dismissed.

A separate Order will be issued.

Dated: March 1, 2013

United States District Judge